# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **EARL DOUGLAS ADDISON,** | ) | **CHAPTER 7** |
| | ) | |
| Debtor. | ) | **CASE NO. 14-71321** |

| | | |
|---|---|---|
| **EARL DOUGLAS ADDISON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ADVERSARY PROCEEDING** |
| v. | ) | **NO. 15-07002** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF AGRICULTURE, and** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **TREASURY,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The matters presently before this Court are ones which have divided other courts. Succinctly put, does the automatic stay of 11 U.S.C. § 362(a) apply to the federal Treasury Offset Program ("T.O.P."), where the federal government seeks to offset a non-tax debt owed by the debtor to a federal agency against a federal income tax refund owed to the debtor? If so, can the debtor claim an exemption in that refund which trumps the government's right of offset? For the reasons set forth below, this Court will follow the path of *Sexton v. Dep't of Treasury (In re Sexton)*, 508 B.R. 646 (Bankr. W.D. Va. 2014), a recent opinion by the Chief Bankruptcy Judge of this district, and answer both questions in the affirmative. However, it does not do so without hesitation. Cases go both ways, and the arguments are compelling in each direction.

FINDINGS OF FACT

The facts in this case are not in dispute.[1]  Earl Douglas Addison (the "Debtor" or "Plaintiff") filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.*, on September 23, 2014, listing his anticipated 2011 and 2012 tax refunds as an asset of his bankruptcy estate.  In his amended Schedule C, the Debtor listed his anticipated tax refunds for 2011 and 2012 with a total value of $8,957.00 and claimed $2,319.00 as exempt under Virginia Code § 34-4.  According to the Amended Complaint, the Debtor filed a homestead deed with the Circuit Court of Wythe County, in which he claimed his 2011 and 2012 income tax refunds as exempt in the amount of $2,319.00.  Am. Compl. at 3.  On Schedule F, the Debtor listed an unsecured nonpriority debt owed to the United States Department of Agriculture ("USDA")  in the amount of $80,989.00, which was a prepetition deficiency resulting from a foreclosure sale on the Debtor's home.  *Id.* at 2.  On November 24, 2014, the Court issued an asset notice, notifying creditors that the trustee may recover assets in this case and setting deadlines to file proofs of claim.  On December 16, 2014, the Court entered an Order discharging the Debtor in this case.

After the Debtor filed his bankruptcy petition, he filed his 2011 and 2012 federal income tax returns.  *Id.*  On November 17, 2014, without obtaining relief from the stay of 11 U.S.C. § 362(a), the United States Department of the Treasury ("Treasury" and, collectively with the USDA, the "Defendants" or "government") sent a letter to the Debtor, notifying him that it was applying his 2011 income tax return of $5,251.27 to a "Non-Tax Federal Debt."  *Id.*  On November 21, 2014, the Treasury sent a second letter to the Debtor, notifying him that it was applying his 2012 income tax refund of $2,834.00 to a "Non-Tax Federal Debt."  *Id.*  By letter

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.  *See* Fed. R. Bankr. P. 7052.

2

dated December 3, 2014, counsel for the Debtor advised the Debt Servicing Center of the Financial Management Service, a bureau of the Treasury, of the Debtor's bankruptcy filing, and requested that it forward the Debtor's withheld tax refunds to the Chapter 7 trustee for distribution. *Id.* The return receipt shows that this letter was received, but no date was listed. *Id.* Neither the Debtor nor his counsel received a response from the Treasury, and the funds were not forwarded to the Chapter 7 trustee or to the Debtor as requested. *Id.*[2]

On January 13, 2015, the Debtor initiated this adversary proceeding against the government by filing a Complaint, which was amended on January 14, 2015, seeking remittance of his 2011 and 2012 tax refunds and asking the Court to find that the Defendants willfully violated the automatic stay by withholding the Debtor's 2011 and 2012 tax refunds to offset prepetition, non-tax debt, and in continuing to withhold the Debtor's tax refunds, in contravention of 11 U.S.C. § 362. *Id.* at 3-4. In addition, the Debtor requested that the Court order the Defendants to reimburse the Chapter 7 trustee the amount of $5,766.27 with interest, order the government to reimburse the Debtor the amount he exempted of $2,319.00, and award actual damages, costs, and attorney's fees to the Debtor. *Id.* at 4.

In its Answer, the government contends that the Treasury is not a proper defendant and that notice to the government was insufficient because the Debtor did not serve the United States Attorney. Answer at 4-5. In addition, the government denied that it violated the automatic stay, asserting that the Debtor was not entitled to a refund of his tax overpayment until after the Treasury complied with the mandate of 26 U.S.C. § 6402(d), and therefore, the tax overpayments did not become a part of the Debtor's bankruptcy estate until after the Treasury set off the

---

[2] The Debtor alleges the USDA was noticed as a creditor when the petition was filed. However, counsel for the USDA contends the address used in the mailing matrix was incorrect. At the hearing before the Court on the USDA's motion for summary judgment, counsel for the USDA conceded the Debt Servicing Center received the Debtor's letter as described above.

3

overpayments against governmental debt pursuant to Section 6402(d). *Id.* at 5. Further, the government argued that the USDA's right to offset pursuant to 11 U.S.C. § 553 takes precedence over the Debtor's right under 11 U.S.C. § 522(c) to exempt any tax refund he might have received from the tax overpayments. On March 4, 2015, the government filed a Motion for Summary Judgment and an accompanying Memorandum of Law.

The Court held two pre-trial conferences by telephone on March 12, 2015 and April 16, 2015,[3] following which the Court issued deadlines for the filing of the Plaintiff's Response to the Defendants' Motion for Summary Judgment and the Defendants' Reply, and scheduled oral arguments in this matter for June 17, 2015. The Plaintiff filed a Response on May 14, 2015, which, among other things, acknowledged that the Treasury is not a proper party defendant. The Defendants filed a Reply on June 2, 2015. The Court held a hearing on June 17, 2015 and took this matter under advisement.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), and (E).

---

[3] The Court held two pre-trial conferences pending the resolution of the appeal in *Sexton* to the Unites States District Court for the Western District of Virginia. On March 31, 2015, the District Court dismissed the appeal on procedural grounds, and did not reach the merits of the case. Notable to this Court, however, is (i) that *Sexton* was no doubt well known to each of the USDA, the Internal Revenue Service, and the U.S. Attorney's Office before the offset in this case occurred, and (ii) that *Sexton* was not mentioned in the government's initial summary judgment argument until the Court inquired about it. The same counsel represented the USDA in both cases. While there will no doubt be times in the future that the judges of this Court do not agree with each other's analysis of an issue, the Court expects a highly relevant opinion of another judge of this district to be brought to its attention and does not relish the prospect of unknowingly establishing a split of authority within this same Court.

As a preliminary matter, the Treasury must be dismissed from this proceeding as an improper defendant. *See* Pl.'s Resp. at 4 ("The Plaintiff acknowledges that the Department of the Treasury is not a proper party Defendant . . . ."); 26 U.S.C. § 6402(g). Section 6402(g) "explicitly reserves plaintiff's ability to sue agency-claimants directly, but it prohibits suits against [Department of Treasury] merely for carrying out its statutory obligation to collect debts that agencies refer to it." *Dasisa v. Dep't of Treasury*, 951 F. Supp. 2d 45, 46 (D.D.C. 2013) (citation omitted). Therefore, the Treasury is "the wrong defendant in this matter," and the plaintiff must pursue relief against "the agency claiming his debt and not the debt collector." *Id.* The Plaintiff in this action has acknowledged that the party from which he seeks relief is the USDA. Pl.'s Resp. at 4.

Pursuant to Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. A fact is "material" when it "might affect the outcome of the suit under the governing law." *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists when the evidence would allow a reasonable jury to return a verdict for a nonmoving party. *See, e.g.*, *id.* On a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable" to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) ("[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." (citation omitted)). The nonmoving party may not rest on pleadings and must

"set out specific facts showing a genuine issue for trial." *The News & Observer Publ'g Co.*, 597 F.3d at 576.

Once a debtor files a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a) arises to protect debtors by providing them with "a breathing spell" and also to protect creditors by "promoting 'orderly and fair' distribution among creditors." *Shaw v. Ehrlich*, 294 B.R. 260, 267 (W.D. Va. 2003) (citation omitted). The automatic stay "protects debtors not only from the commencement or continuation of legal actions against them, but also from any acts to obtain possession of, create or enforce liens against, or collect assets included in the debtor's estate." *Sexton*, 508 B.R. at 657 (citing 11 U.S.C. § 362(a)); *see also Montclair Prop. Owners Ass'n v. Reynard (In re Reynard)*, 250 B.R. 241, 244-45 (Bankr. E.D. Va. 2000) ("The automatic stay prevents any act to create, perfect, or enforce any lien against property of the estate, and any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.")). The stay "is one of the most vital protections of the bankruptcy system." *See, e.g.*, *Shaw*, 294 B.R. at 267 (citation omitted). Among the actions specifically prohibited by the automatic stay is the "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). The automatic stay is not, however, without bounds. Section 362(b) limits the reach of the automatic stay by "delineat[ing] an extensive—and exhaustive—list of actions that are not subject to the stay's protection." *Sexton*, 508 B.R. at 657 (citations omitted); 11 U.S.C. § 362(b). Particularly relevant to the instant case is Section 362(b)(26), which provides that setoff under nonbankruptcy law of an *income tax refund* with respect to an *income tax liability* is not subject to the automatic stay. *See* 11 U.S.C. § 362(b)(26).

"The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18-19 (1995) (quoting *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528 (1913)). In *Strumpf*, the Supreme Court held that the bank, by placing an administrative freeze on a debtor's bank account, was not exercising its right of setoff within the meaning of Section 362(a)(7) in violation of the automatic stay. *Id.* at 19. The Bankruptcy Code addresses a creditor's right of setoff in 11 U.S.C. § 553. Section 553(a) "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Id.* Therefore, Section 553 does not actually create any setoff rights but merely preserves the setoff rights that exist under applicable nonbankruptcy law.

The applicable nonbankruptcy law relevant in this case is the T.O.P., which "authorizes the Secretary of the Treasury to intercept an individual's tax overpayment and apply it to preexisting debts." *Sexton*, 508 B.R. at 658 (footnote omitted) (citing 26 U.S.C. § 6402). Section 6402(a) provides that the Treasury "may" credit a taxpayer's income tax overpayment against any tax liability. 26 U.S.C. § 6402(a). Section 6402(d) provides that the Treasury "shall" credit a taxpayer's income tax overpayment against a non-tax debt owed to another federal agency other than the Internal Revenue Service ("I.R.S."). 26 U.S.C. § 6402(d). Therein lies the rub.

The courts holding that Section 6402(d) trumps the stay of Section 362(a) find it important to explain the legal distinction between a tax "overpayment" and a tax "refund." *See, e.g.*, *U.S. Dep't of Agric. Rural Hous. Serv. v. Riley*, 485 B.R. 361, 365-67 (W.D. Ky. 2012). "A tax overpayment is the amount a taxpayer pays to the government in excess of [his] tax liability, whereas a tax refund represents the actual amount the government returns to the taxpayer when

7

the taxes collected exceed [his] liability." *Sexton*, 508 B.R. at 664; *Sorenson v. Sec'y of Treasury of United States*, 475 U.S. 851, 854 (1986). An overpayment is subject to the T.O.P.; therefore, "a tax refund is the net remaining, after satisfaction of taxpayer's current year's tax liability and other government indebtedness certified to the IRS under TOP, which the government must then return to the debtor." *Sexton*, 508 B.R. at 664 (citing 26 U.S.C. § 6402(a)). The government contends that *Sorenson* is determinative of the relationship between the Bankruptcy Code and the offset provisions in Section 6402 of the Internal Revenue Code. *See* Defs.' Reply at 8 (citing *Sorenson*, 475 U.S. at 854-55, 861-62). The government cites to *Sorenson* in support of its argument that "it is only after [Section] 6402 is applied to the plaintiff's 2011 and 2012 tax overpayments that any remainder becomes a refund and part of [the Debtor's] bankruptcy estate subject to the automatic stay." *Id.* at 8-9 (citing to *Sorenson*, 475 U.S. at 854-55 ("*Subject to specified setoffs*, § 6402(a) directs the Secretary to credit or refund 'any overpayment' to the person who made it." (emphasis added))). While the government acknowledges that the *Sorenson* case was not brought to the Court's attention before its decision in the *Sexton* case, this Court has examined *Sorenson* and concludes that it does not affect its analysis today.

In *Sorenson*, the Supreme Court held that excess earned-income credits were "overpayments" that could be intercepted pursuant to Section 6402(c). *Sorenson*, 475 U.S. at 865. The Internal Revenue Code and the Social Security Act authorize the Secretary of the Treasury to intercept tax refunds payable to taxpayers who are delinquent in child support obligations. *Id.* at 852-53; *see also* 11 U.S.C. § 6402(c). The Internal Revenue Code also permits taxpayers who have dependent children living with them to receive earned-income credits. *Sorenson*, 475 U.S. at 853-54. In *Sorenson*, a taxpayer timely filed his federal income

8

tax return and anticipated a tax refund, which consisted in part of excess earned-income credits and in part of an overpayment of taxes. *Id.* at 855. However, the taxpayer failed to make his child support payments, and as a result, the I.R.S. intercepted part of the taxpayer's tax refund.[4] *Id.* at 857-58. The taxpayer argued that excess earned-income credits were beyond the reach of the intercept provisions of Section 6402. *Id.* at 858. The Supreme Court disagreed, and in holding that excess earned-income credits could be intercepted by the government, the Supreme Court examined policy arguments and explained that nothing in Section 464(a) of the Social Security Act exempts excess earned-income credits from the intercept provisions of Section 6402. *Id.* at 862-63.

As further discussed below, *Sorenson* is not a bankruptcy case and was decided prior to Congress's enactment of Section 362(b)(26). Congress is presumed to have known of existing case law from the highest court in the land in enacting legislation on point. *See, e.g.*, *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) ("It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute." (citations omitted)); *First Union Nat'l Bank of Fla. v. Harmon*, 234 B.R. 667, 670 (D. Md. 1998) ("Congress, in passing legislation, does not operate in a vacuum and is presumed to know the existing law when it acts." (citation omitted)).

It is undisputed that, prior to the Debtor's bankruptcy filing, the USDA had a legal right under Section 6402 to set off the Debtor's income tax overpayment against any debts owing to the government prior to issuing a refund to the taxpayer. *See* 26 U.S.C. § 6402. These were

---

[4] The Treasury only intercepted half of the taxpayer's refund due to "negotiations concerning the status of tax refunds in community property States such as Washington," but like the Supreme Court held, that issue is not "germane to the question now presented to this Court." *Id.* at 587.

prepetition obligations on both sides, and debts were mutual.[5] It is also undisputed that once the Debtor filed a bankruptcy petition, the automatic stay of Section 362 came into effect. *See* 11 U.S.C. § 362(a). Therefore, the issue before the Court is whether the government's postpetition setoff of the Debtor's tax overpayment against non-tax federal debt is a violation of the automatic stay of Section 362. In considering this issue, the Court must first determine whether the Debtor's interest in his tax overpayment is property of the bankruptcy estate such that it falls under the protections of the automatic stay.

The Debtor asserts that since Section 362(a)(7) specifically prohibits setoff actions and because Section 362(b)(26) only excepts from the automatic stay the setoff of an "*income tax refund*" by a "*governmental unit*," against "an *income tax liability*," the government's action in offsetting the Debtor's refund against a *non*-tax liability violates the automatic stay. Am. Compl. at 3; Pl.'s Resp. at 5. In arriving at this conclusion, the Debtor argues that his tax refund became property of the bankruptcy estate upon the filing of a bankruptcy petition. *See* Pl.'s Resp. at 5-6 (citing *Sexton*, 508 B.R. at 661-63; *Moore v. Dep't of Hous. & Urban Dev. (In re Moore)*, 350 B.R. 650, 656 (Bankr W.D. Va. 2006)). Further, the Debtor also argues that the continued withholding of the Debtor's tax refunds constitutes a willful and deliberate violation of the automatic stay. Am. Compl. at 4. At the hearing on June 17, 2015, counsel for the Debtor conceded that the Debtor lacks standing to recover $5,766.27—the amount withheld that he did not exempt—for the benefit of the Chapter 7 trustee, who has not intervened in this action, and clarified that the Debtor is seeking only to recover $2,319.00—the amount he did claim as exempt—from the USDA.

---

[5] Mutuality requires that the debt in question "be owed in the same right and between the same parties standing in the same capacity." *Marshall v. Shipman Elevator Co. (In re Marshall)*, 240 B.R. 302, 304 (Bankr. S.D. Ill. 1999) (citation omitted). Generally, "the federal government is considered to be a single 'unitary creditor' for setoff purposes." *Collier on Bankruptcy* ¶ 553.03[3][b][iii] (Alan N. Resnick & Henry J. Sommer eds.,16th ed. 2013); *Newberry v. U.S. Dep't of Agric. (In re Newberry)*, Case No. 12-40455, Adv. No. 12-4060, 2013 WL 618746, at *3 n.4; 2013 Bankr. LEXIS 622, at *8 n.4 (Bankr. S.D. Ill. Feb. 19, 2013).

Conversely, the government argues that the Debtor only had a contingent interest in his tax refund until after the Treasury complied with the mandatory requirements of the T.O.P. as required by Section 6402. Defs.' Answer at 5. Citing to *Sorenson*, the government asserts that a tax overpayment must be credited against governmental debts before it becomes a refund, and thus, a part of the Debtor's bankruptcy estate. Defs.' Reply at 8-9 (citing *Sorenson*, 475 U.S. at 854-55, 861-62). In other words, the Debtor's interest can rise no higher than the net remaining after the offset. The government contends that since the amount that the Debtor owed to the government exceeded the amount of his tax overpayment, nothing remained after the Treasury complied with the provisions of the T.O.P.; therefore, no amount ever became a refund to the Debtor, and further, no refund ever existed to become part of the Debtor's bankruptcy estate. *See* Defs.' Mem. of Law at 3-5. As such, the Debtor could not exempt the refund. *Id.* at 6-7 ("[T]he only interest the plaintiff or his estate had in his tax overpayment that could be exempted was a claim contingent on the Treasury's application § 6402(d)."). The government further contends that even the Chapter 7 trustee is not entitled to the remittance of the overpayments, since "the trustee, like the Plaintiff, had only a contingent interest in the tax overpayments." *Id.* at 7.

Although another judge of this Court has reached a decision on this issue in *Sexton*, the Court is fully aware that there is a split in the case law. Both schools of thought are persuasive. *Compare Sexton*, 508 B.R. at 662-64 (ruling that the government's postpetition setoff of the debtor's tax overpayment to non-tax federal debt was a violation of the automatic stay because the debtor's interest in her tax overpayment was property of the bankruptcy estate and was properly exempted by the debtor), *with Riley*, 485 B.R. at 365-67 (ruling that the debtors were never entitled to a tax refund because their governmental debts exceeded their tax overpayment,

11

and therefore, the debtors had no refund that became property of the bankruptcy estate that could be claimed as exempt). The divergent view derives from the Fifth Circuit's decision in *I.R.S. v. Luongo (In re Luongo)*. *See I.R.S. v. Luongo (In re Luongo)*, 259 F.3d 323 (5th Cir. 2001).

In *Luongo*, the debtor filed for relief under Chapter 7 of the Bankruptcy Code; at the time of the bankruptcy filing, the debtor owed an unpaid tax liability to the I.R.S. *Id.* at 327. After the debtor received a discharge, the I.R.S. set off the debtor's income tax overpayment against the unpaid tax liability pursuant to Section 6402(a). *Id.* The debtor then moved to reopen her bankruptcy case and filed amended schedules to exempt her income tax overpayment. *Id.* The bankruptcy court ruled that the I.R.S. was not entitled to offset the debtor's properly exempted tax overpayment against prepetition governmental debt. *Id.* On appeal, the district court reversed, holding that the unambiguous language of Section 553(a) makes clear that the I.R.S.'s "right of setoff was unaffected by [the debtor's] claims that the tax overpayment is exempt property and the tax liability was discharged in the bankruptcy proceeding." *Id.* The debtor appealed, and the Fifth Circuit held that the debtor is generally only entitled to a tax refund to the extent that the tax overpayment exceeds the unpaid tax liability. *Id.* at 335-36. Accordingly, the court concluded that the debtor was not entitled to a tax refund, the refund never became property of the estate, and thus, the debtor had no interest in the refund that could be properly exempted. *Id.* This argument has substantial appeal. However, as the Court in *Sexton* noted, *Luongo* "did not have Bankruptcy Code [S]ection 362(b)(26) to consider when it issued its ruling." *Sexton*, 508 B.R. at 662.

In deciding to follow *Sexton*, this Court finds that the Debtor's right to recover his tax overpayment for the 2011 tax year arose at midnight on December 31, 2011. *See id.* at 662-63 (finding that "a debtor's interest in her tax overpayment becomes fixed at the close of the

12

relevant tax year for the purposes of bankruptcy law"). Likewise, this Court finds that the Debtor's right to recover his tax overpayment for the 2012 tax year arose at midnight on December 31, 2012. *See id.* As Judge Connelly explained in *Sexton*:

> [O]nce all of the facts necessary to ascertain the amount of the overpayment exist—at midnight of December 31 of the relevant tax year—the taxpayer has a right to recover that amount. The intercept statute authorizes the government to intervene and capture those funds; however, if the taxpayer files for bankruptcy prior to the Secretary acting, the debtor's interest in the property at that time vests in the bankruptcy estate. If, thereafter, the government wants to use the overpayment for a setoff under section 6402, it must first get relief from the stay or act under an applicable exception enumerated in section 362(b).

*Id.* at 658 n.14.

Accordingly, once the Debtor filed his bankruptcy petition on September 23, 2014, all of his eligible property became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a). "Section 541(a) defines property of the estate liberally to include all of the debtor's property interests, no matter who controls or possesses the property or where it is located." *Id.*; 11 U.S.C. § 541(a). Section 541(b) sets forth certain property interests that are excluded from the bankruptcy estate. *See* 11 U.S.C. § 541(b). This Court finds it instructive that "[n]owhere in [S]ection 541(b) . . . does Congress exclude a debtor's interest in [his] tax overpayment or right to a refund." *See Sexton*, 508 B.R. at 662. Therefore, this Court finds that the Debtor's interest in his tax overpayment vested in the bankruptcy estate at the time he filed his bankruptcy petition. Accordingly, at that time, the Debtor's interest in his tax overpayment received the protections of the automatic stay, including Section 362(a)(7), which specifically stays setoff actions. *Sexton*, 508 B.R. at 662; *see also Moore*, 350 B.R. at 655 (holding that the government's postpetition setoff of the debtor's tax refund against prepetition debt was a violation of the automatic stay). As previously discussed at length in *Sexton*, courts that treat the government's right to setoff under Section 6402 the same regardless of whether the taxpayer is in

13

bankruptcy or not "are essentially finding that TOP either (1) creates a statutory lien on the amount of the overpayment or (2) creates a statutory exclusion to the property interest's inclusion in the bankruptcy estate or (3) a statutory exception from the protections of the automatic stay. This Court disagrees." *Id.* at 664.

This Court further concludes that the language of Section 362(b)(26) supports this finding. Section 362(b)(26) "contrain[s] the reach of the automatic stay" by excepting from violating the automatic stay "the setoff under applicable nonbankruptcy law of an income tax refund . . . against an *income tax liability.*" *Id.* at 662; *see also* 11 U.S.C. § 362(b)(26). Notably, Congress worded Section 362(b)(26) to only except a setoff of a debtor's income tax refund against income tax liability from violating the automatic stay, and did not include language excepting setoffs against non-tax liability. "Under the statutory canon of construction *expressio unius est exclusio alterius*, Congress's specific inclusion of the phrase 'income tax liability' excludes the application of the provision to non-tax liabilities." *Id.* at 663; *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 719 (1991) ("When a provision sets forth a general rule followed by specific exceptions to that rule, one must assume—absent other evidence—that no further exceptions are intended."). Moreover, as stated in *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004), "[i]f Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." *Lamie*, 540 U.S. at 642.

Further, the Court finds that *Sorenson* is not applicable in this case because it was decided prior to Congress's enactment of Section 362(b)(26), which is controlling here. For the same reason, this Court declines to follow the Fifth Circuit's reasoning in *Luongo*. *Sexton*, 508 B.R. at 663. "Congress's enactment of [S]ection 362(b)(26) presupposes that such property interests become part of the estate subject to the stay, except for this express carve out." *Id.* at

14

663. Were the Court to hold otherwise, "it would render [S]ection 362(b)(26) unnecessary surplusage." *Id.* (declining to "adopt an understanding of these provisions that renders an enacted part of the Bankruptcy Code a nullity"). Had Congress wanted to except from violating the automatic stay the setoff of a debtor's income tax refund against *any* governmental debts—whether it be income tax liability or non-tax liability—Congress simply could have worded subsection (b)(26) accordingly. Congress did not do so; instead, Congress worded the statute in such a way as to only except setoffs against *income tax* liability from violating the automatic stay, and this Court is bound by the language of the statute as written. *See Sexton*, 508 B.R. at 663 ("Congress easily could have excepted all governmental debts by omitting the modifier 'income tax' before the word 'liability.' It did not do so, and the Court declines to ignore the express language of the statute.").[6]

Having found that the Debtor's interest in his tax overpayment vested in the bankruptcy estate upon filing his petition, and therefore acquired the protections of the automatic stay, the Court must then determine whether the USDA's right to offset pursuant to Section 553 can defeat the Debtor's exemption rights under Section 522(c). Section 522(c) provides that except in certain circumstances that are not applicable here, "[u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case." 11 U.S.C. § 522(c).

Courts are also divided over whether Section 522(c) trumps a creditor's right to setoff preserved under Section 553. *See Miller v. United States*, 422 B.R. 168, 172-73 (W.D. Wis. 2010). Though the *Miller* court ultimately sided with the minority reasoning, it acknowledged

---

[6] The government is not without options. Absent a proper claim of exemption, as discussed below, the Court notes that, following *Strumpf*, the government may be within its rights to place a "hold" on the refund to preserve the status quo so long as it promptly seeks relief from stay to exercise its right of setoff. *See Strumpf*, 516 U.S. at 18-19.

15

that more courts that have reached this issue "have held that exempt property is not subject to setoff, than have reached the opposite conclusion." *See id.* at 172 (citing to multiple cases holding that the exempt status of property under Section 522(c) takes precedence over setoff rights under Section 553). In the eastern and western districts of Virginia, "it is settled law . . . that a properly-claimed exemption trumps a creditor's right to offset mutual prepetition debts and liabilities." *Sexton*, 508 B.R. at 662 (citing *Moore*, 350 B.R. at 656; *In re Ward*, 210 B.R. 531, 536 (Bankr. E.D. Va. 1997) ("The general rule in Virginia is that a creditor may not exercise a right of setoff against exempt property.")). Accordingly, "absent relief from the stay and a challenge to the claimed exemption," the Debtor's properly claimed exemption in the amount of $2,319.00 trumps the USDA's setoff rights preserved under Section 553. *See id.*

Last, the Court turns to the issue of whether to grant attorney's fees to counsel for the Plaintiff in accordance with the Equal Access to Justice Act. In general, the American Rule does not allow a prevailing litigant to recover any attorney's fees from the losing litigant. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015); however, this rule is not absolute. The Equal Access to Justice Act is a statutory exception to the American Rule, and provides that attorney's fees may be granted against the United States in certain circumstances. *See* 28 U.S.C. § 2412(d)(1)(A)); *Baker Botts L.L.P.*, 135 S. Ct. at 2164 ("The attorney's fees provision of the Equal Access to Justice Act offers a good example of the clarity we have required to deviate from the American Rule."). Section 2412(d)(1)(A) provides, in relevant part:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States in any court . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.*

"The United States has the burden of showing that its position was substantially justified." *United States v. 515 Granby, LLC*, 736 F.3d 309, 314-15 (4th Cir. 2013) (citing *EEOC v. Clay Printing Co.*, 13 F.3d 813, 815 (4th Cir. 1994)). Courts have held that the position of the United States is "substantially justified" when it has a "reasonable basis in law and fact." *Id.* (quoting *Cody v. Caterisano*, 631 F.3d 136, 141 (4th Cir. 2011)).

Although the government was fully aware that its position was previously rejected by the Chief Bankruptcy Judge of this district in the *Sexton* case, this Court finds that it does not necessarily follow that the government was not substantially justified in taking the same position in this case. Of particular relevance to this finding is that there is a split in the case law regarding this issue and that this Court is not bound by the doctrine of *stare decisis* to adhere to the ruling in *Sexton*. Therefore, on the basis of the record in this case, this Court finds that the government's position was "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A)-(B). Accordingly, there is no need for a further hearing regarding attorney's fees.

## CONCLUSION

The Court concludes that the Debtor's interest in his tax overpayment is property of the bankruptcy estate, and is therefore protected by the automatic stay, and that the Debtor has properly claimed an exemption in the amount of $2,319.00 in his tax overpayment. Therefore, this Court will deny the Motion for Summary Judgment filed by the Defendants; the Plaintiff, however, has not cross-moved for summary judgment.

Federal Rule of Civil Procedure 56(f)(1) provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary for a nonmovant." Fed. R. Civ. P. 56(f)(1); Fed. R. Bankr. P. 7056. Further, Federal Rule of Civil Procedure 56(f)(3) provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . consider summary

17

judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3); Fed. R. Bankr. P. 7056. The parties have conceded, and this Court finds, that there is no genuine dispute as to any material fact in this case. However, the Plaintiff has not filed a cross-motion for summary judgment, and the USDA has not filed a motion for summary judgment on the issue of attorney's fees. Therefore, pursuant to Rule 56(f), the Court gives notice that the Court is considering granting summary judgment as set forth herein. Further, the Court finds that the parties have extensively briefed, and are aware of the relevant facts and legal issues, related to the matters in controversy. Thus, a limited period of time is appropriate as a "reasonable time to respond" pursuant to Rule 56(f). *See Sprint Nextel Corp. v. The Middle Man, Inc.*, No. 12-2159-JTM, 2015 WL 163001, at *2-3; 2015 U.S. Dist. LEXIS 3792, at *5-6 (D. Kan. Jan. 13, 2015). Accordingly, the USDA shall have until July 20, 2015 to set forth any ground, legal or factual, in opposition to the summary judgment on behalf of the Plaintiff on the issue of violation of the stay of 11 U.S.C. § 362(a). Likewise, the Plaintiff shall have until July 20, 2015 to set forth any ground, legal or factual, in opposition to the summary judgment on behalf of the USDA on the award of attorney's fees. Failure to provide a timely response will result in the entry of summary judgment as set forth herein. Further, it is undisputed that the Treasury must be dismissed from this action as an improper defendant pursuant to 26 U.S.C. § 6402(g). An Order incorporating the Court's rulings will be entered contemporaneously herewith.

Decided this 13th day of July, 2015.

*[signature]*
UNITED STATES BANKRUPTCY JUDGE